16

THE STATE, EX REL. VUKOVICH, MAYOR, APPELLANT, *v.*
YOUNGSTOWN CIVIL SERVICE COMMISSION
ET AL., APPELLEES.

[Cite as State, ex rel. Vukovich, v. Civil Service Comm. (1982),
69 Ohio St. 2d 16.]

(No. 81-41—Decided January 13, 1982.)

*Mr. Edward N. Sobnosky,* director of law, and *Mr.
William J. Higgins,* for appellant.

*Mr. Richard J. LaCivita,* for appellees.

CLIFFORD F. BROWN, J. This appeal raises the question whether a municipal civil service commission is empowered to hear appeals of employees whose pay is reduced[1] as the result of a shortened work week due to economic conditions.

Municipal civil service commissions, as authorized in R. C. 124.40, exercise the powers and perform the duties prescribed and conferred upon the Director of Administrative Services and the State Personnel Board of Review, with respect to the civil service of the subject city, its school and health districts. The statute specifically provides that "[t]he procedure applicable to reductions, suspensions, and removals, as provided for in section 124.34 of the Revised Code, shall govern the civil service of cities." Under R. C. 124.34, in any case of reduction, suspension of more than three working days, or removal, the relevant order must be provided the affected employee and filed with the commission. Within ten days of filing the order, the employee may bring an appeal before the commission, to be heard within 30 days, to result in affirmance, disaffirmance, or modification of the judgment of the appointing authority.

Appellant contends that the civil service commission's jurisdiction to hear appeals from job actions is limited to those taken for disciplinary reasons, relying on this court's holding in *Curtis v. State, ex rel. Morgan* (1923), 108 Ohio St. 292. That case, interpreting a former version of R. C. 124.34, held that the statute had no application where the employee is removed on the ground of economy.[2] The decision in *Curtis,* however,

[1] The subject ordinance states that 40-hours per week is usually considered full-time employment. The Court of Appeals acknowledged that city council by way of another ordinance specifically sets an hourly and an annual salary, derived by multiplying the hourly wage by 80 (given a two-week pay period) and again by 26 (the number of pay days in a year). Since the number of hours worked determines an employee's annual pay, any reduction in hours must logically be a "reduction in pay." Furthermore, Ohio Adm. Code 123:1-47.01 (42) defines "reduction" as " * * * *any* decrease in compensation for an employee." (Emphasis added.)

[2] Paragraph one of the syllabus in *Curtis* states:

"Where an employee in the classified service of a municipality is temporarily laid off by the safety director in the interest of economy and for the sole reason of the lack of sufficient funds with which to pay salaries of the entire working force in such department, the statutory provisions for written notice to such laid-off or suspended employee and for opportunity to make and file an explanation have no application."

18

was criticized in *State, ex rel. Osborn*, v. *Jackson* (1976), 46 Ohio St. 2d 41, 45, in which we stated that, "although * * * [*Curtis*] may have been good law when decided in 1923, [it] is not relevant to the instant case because the statute upon which the court relied in *Curtis* no longer exists." We continue to find *Curtis* inapplicable.

The rule of law relevant to disposition of this appeal is contained in paragraph two of the syllabus in *Jackson, supra:*

"The authority of the State Personnel Board of Review to hear an appeal by a classified state employee from a layoff order of a director of a state department is not dependent upon the reason for the layoff."

The authority of the State Personnel Board of Review to hear appeals from layoff orders derives from R. C. 124.03. That statute authorizes the board to "[h]ear appeals, as provided by law, of employees in the classified state service from final decisions of appointing authorities or the director of administrative services relative to reduction in pay or position, job abolishment, layoffs, suspension, discharge, assignment or reassignment to a new or different position classification * * * ." Although the syllabus in *Jackson* is confined to layoffs, it necessarily extends to any job action encompassed in R. C. 124.03. And since the municipal civil service commissions are vested with the powers and duties of the board of review, it follows that such commissions have jurisdiction over reductions, suspensions and removals, regardless of the reasons for such job actions.[3]

Appellant also contends that city council has exclusive authority to determine the wages of city employees, and that the review of these appeals by the civil service commission would infringe on that right. In *Teamsters Local Union No.*

---

Paragraph four of the syllabus in *Curtis* states, in relevant part:

"The fundamental purpose of civil service laws and rules is to * * * safeguard appointees against unjust charges of misconduct and inefficiency, and from being unjustly discriminated against for religious or political reasons or affiliations. Those laws and rules may not be invoked by an appointee, where no discrimination is claimed and no charges have been made involving misconduct, inefficiency, or other delinquency.

[3] This court has recognized the appealability of layoffs due to economic conditions in *State, ex rel. Potten*, v. *Kuth* (1980), 61 Ohio St. 2d 321, 327, and *State, ex rel. Ogan*, v. *Teater* (1978), 54 Ohio St. 2d 235, 246, as well as in *Jackson.*

*377* v. *Youngstown* (1980), 64 Ohio St. 2d 158, this court held as follows:

"A municipality which incorporates the provisions of the Revised Code relating to municipal civil service in its charter does not * * * divest city council of its authority to determine wages of city employees, nor does it empower the municipal civil service commission to order standardization of wages of the employees of the municipality."

Our decision in *Teamsters* recognizes that a municipality need not adhere to the pay ranges and schedules of rates set forth in R. C. 124.15(A), given the power of city council to determine wages of city employees.[4] Accordingly, a civil service commission has no power to order standardization of wages of city employees performing similar duties. The city is free to establish its own pay scale.

However, no issue of reduction in pay was raised in *Teamsters*. To extend the reasoning in *Teamsters* to such cases would effectively abrogate application of civil service laws to municipal employees. This we refuse to do. The civil service statutes provide an appeal for classified employees reduced in pay. This protection cannot be circumvented by labeling such a reduction "a new pay scale," and therefore under exclusive control of city council.

Having concluded that the executive order temporarily reducing the work week from 40 hours to 32 hours constituted a reduction in pay within the meaning of R. C. 124.34, we agree with the Court of Appeals' determination that the municipal civil service commission had jurisdiction to hear the appeals of the affected employees, under R. C. 124.40.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

---

[4] In *Teamsters*, the Youngstown city council had passed an ordinance granting wage increases to water-department employees. Thereafter, employees of the street department sought similar increases on the basis that the employees of the two departments performed similar duties. The city civil service commission found the duties similar, but refused to order standardization. The street department employees were granted injunctive relief by the trial court. The Court of Appeals affirmed, holding that the municipal civil service commission has the same duties as the Director of Administrative Services with respect to the standardization of wages of state employees. This court reversed, based on the rationale set forth in the syllabus quoted above.

CELEBREZZE, C. J., W. BROWN and SWEENEY, JJ., concur.

LOCHER, HOLMES and KRUPANSKY, JJ., dissent.

HOLMES, J., dissenting. I must dissent, in that the legislative enactment by the council of the city of Youngstown, and the resultant proclamation of the mayor, were not such acts as fall within the review jurisdiction of the civil service commission of that city.

A bit of background is necessary for the proper interpretation of the facts as they relate to the code sections under consideration here, R. C. 124.03 and 124.34. We may take notice of the fact that the economy of the city of Youngstown has for many years been based upon the production of steel. In the last few years three basic steel plants located in and about Youngstown have been permanently closed. These closings involved the loss directly and indirectly of many jobs in the community. The reverberation of the closings has without serious question led to falling tax revenues for the city of Youngstown and a further depression of its tax base. These facts have culminated in Youngstown experiencing severe economic distress.

Accordingly, the city council passed an ordinance which took effect September 4, 1980. This ordinance provided for the reduction of the normal work week of all city of Youngstown employees from 40 hours to 32 hours. The ordinance passed unanimously as emergency legislation, and was effectuated by the mayor of Youngstown, George Vukovich, issuing a written executive directive.

As to the interpretation of the sections of law involved herein, I am in agreement with the former holding of this court that the authority of the State Personnel Board of Review to hear an appeal from a layoff order is not dependent upon the reason for the layoff order. *State, ex rel. Osborn,* v. *Jackson* (1976), 46 Ohio St. 2d 41, paragraph two of the syllabus. This law would be equally applicable to a municipal civil service commission. The board, or a civil service commission, may review the basis and surrounding circumstances of layoffs. *State, ex rel. Ogan,* v. *Teater* (1978), 54 Ohio St. 2d 235; *State, ex rel. Potten,* v. *Kuth* (1980), 61 Ohio St. 2d 321. However, those cases dealt with layoffs, a circumstance which is not involved here.

Also, the State Personnel Board of Review and a municipal civil service commission may, pursuant to R. C. 124.03 and 124.34, review cases involving a reduction in pay. But, again, the facts of this case do not present one involving a reduction in pay of the employees as such a reduction is meant within these sections of law.

The Court of Appeals here found as a matter of fact that there was a reduction in pay of the city employees due to the councilmatic determination of the economic necessity of a 32-hour work week rather than the regular 40-hour work week. This I believe to be a misinterpretation of this governmental body's act. The Youngstown Home Rule Charter empowers the city council to adjust the hours of labor of the city's employees as follows:

"Section 115. Hours of Labor.

"Eight hours shall constitute a day's work and not to exceed forty-eight hours a week's work, for workmen engaged on any public work done by the City. In any case of extraordinary emergency, the Council may, by resolution, suspend the operation of this section as to any particular job, contract or operation."

This section was adopted with the clear purpose of granting city council specific authority to amend hours of labor in instances of an emergency such as found to be present here. The ordinance and proclamation of the mayor were legitimate legislative and executive determinations of this municipality that the regular work hours of city employees should be shortened by virtue of the drastic economic conditions.

This court, in *Teamsters Local Union No. 377* v. *Youngstown* (1980), 64 Ohio St. 2d 158, held that:

"A municipality which incorporates the provisions of the Revised Code relating to municipal civil service in its charter does not, in view of R. C. 124.14(B), divest city council of its authority to determine wages of city employees, nor does it empower the municipal civil service commission to order standardization of wages of the employees of the municipality."

Also, this court stated, at page 160, in the opinion, that:

"The right of a municipality to determine the compensation of its employees is, without question, a power of local self-

government. *State, ex rel. Mullin,* v. *Mansfield* (1971), 26 Ohio St. 2d 129. * * * "

If this is the law relative to providing for city-wide employee pay scales, then is there any less right of the city council on a city-wide basis to shorten the regular work week due to economic factors without the council's action being reviewable by the city civil service commission? I think not.

The intent of R. C. 124.03 is to provide a review of employees who have been removed, laid off, or reduced in pay by their appointing authority where there may be a question of the basis or motivation of such action by the appointing authority. It is my belief that the intent of such section is not a review of the acts of council establishing hours for all employees, these hours being determined upon economic considerations of the legislative body of this municipality.

There has been no councilmatic or executive order relating to a specific employee pay reduction here. Contrarily, this matter, as stated previously, involves the legislative exercise by council of its charter powers of accommodating the totality of the hours of employment of all city employees to the available funds of the city which have been seriously limited by economic circumstances. The review of such councilmatic action is not within the jurisdiction of the civil service commission of the city.

I would reverse the Court of Appeals.

LOCHER and KRUPANSKY, JJ., concur in the foregoing dissenting opinion.