OPINION
{¶ 1} Plaintiff-appellant Sharron M. Pohl appeals from an order dismissing her motion for contempt against defendant-appellee Robert J. Pohl and ordering Robert to pay Sharron $12,681.67, her share of his retirement benefits, pursuant to their separation agreement. Sharron contends that the trial court abused its discretion in its calculation of her share of Robert's retirement benefits, because it failed to use the coverture fraction analysis articulated in Hoyt v. Hoyt (1990),53 Ohio St.3d 177, 559 N.E.2d 1292, which would result in her receiving $89,695.70 of Robert's retirement benefits. We conclude that Hoyt, supra, is distinguishable from this case because it involved a contested divorce decree and a Qualified Domestic Relations Order (QDRO), whereas this case does not involve a QDRO and involves a decree of dissolution incorporating a separation agreement entered into by the parties. We conclude that the determinative issue in this case is the interpretation of the phrase "accrued through 6/30/88" in the separation agreement, and we cannot conclude that the trial court acted in an unreasonable, arbitrary, or unconscionable manner in finding that the phrase is neither vague nor ambiguous. We conclude that the trial court did not abuse its discretion in reaching the decision that it was the intent of the parties that Robert pay Sharron one-half of his retirement benefits as valued on June 30, 1988. Therefore, we conclude that the trial court did not abuse its discretion in finding that Robert is required to pay Sharron $12,681.67.
 {¶ 2} Sharron also contends that the trial court erred in dismissing her motion for contempt, because the evidence shows that Robert did not distribute her share of the retirement benefits to her when he received a lump-sum payment from his retirement plan, even though he knew Sharron was entitled to receive a portion of his retirement benefits.
 {¶ 3} We conclude that the trial court did not act in an unreasonable, arbitrary, or unconscionable manner in concluding that Robert "did not willfully or knowingly fail to comply with the division of pension," based on Robert's testimony that he was without legal representation at the time of the dissolution and that he believed that all matters pertaining to the property division, including retirement accounts, were fully resolved at the time of the dissolution. We conclude that the trial court did not abuse its discretion in dismissing Sharron's motion for contempt.
 I {¶ 4} Sharron and Robert Pohl were married in 1967. In 1969, Robert was employed by Ohio Bell, which later became SBC. In September, 1989, a final judgment entry and decree of dissolution was filed terminating the Pohls' marriage. The decree approved and incorporated a separation agreement between the parties, dated October 12, 1988. Paragraph III(D)(1)(b) of the separation agreement provided that "Wife shall have one-half of Husband's retirement benefits pursuant to Husband's Ohio Bell Deferred Vested Pension accrued through 6/30/88. The division shall be pursuant to a Qualified Domestic Relations Order." A QDRO was never filed.
 {¶ 5} In November, 1999, Robert retired from SBC, and his Ameritech Retirement Plan, successor to the Ohio Bell Deferred Vested Pension Plan, approved his election to receive a lump-sum payment in the amount of $288,410.61. Robert did not distribute any of the retirement benefits to Sharron and rolled the entire amount into an individual retirement account.
 {¶ 6} In March, 2002, Sharron filed a motion for contempt, alleging that Robert should be held in contempt for failing to pay one-half of his retirement benefits to her, as required by paragraph III(D)(1)(b) of the separation agreement. Sharron's motion for contempt requested payment of her portion of the retirement benefits, plus ten percent interest. In June, 2002, Robert paid Sharron $17,000.
 {¶ 7} After a hearing, a magistrate issued a decision and permanent order dismissing the motion for contempt and ordering Robert to pay Sharron $12,681.67. The magistrate concluded that there could be no finding of contempt, because there was no willful failure to comply with the separation agreement by Robert. The magistrate also concluded that the decree contained no reference to Sharron being entitled to one-half of the coverture fraction of the retirement benefits, and that the language of the decree was clear and definite regarding Sharron being entitled to the pension "accrued through 6/30/88." The magistrate found that Sharron was entitled to $22,832.05, plus ten percent interest for the three years since Robert had received the retirement benefits, minus the $17,000 Robert had already paid Sharron, which amounted to $12,681.67.
 {¶ 8} Sharron filed objections to the magistrate's decision. The trial court overruled Sharron's objections and adopted the magistrate's decision and permanent order. From this judgment, Sharron appeals.
 II {¶ 9} Sharron's first assignment of error is as follows:
 {¶ 10} "The trial court abused its discretion in calculating appellant's share of the pension benefits as the calculation is inequitable and contrary to law[.]"
 {¶ 11} Sharron contends that the trial court abused its discretion in its calculation of her share of Robert's retirement benefits, because it failed to use the coverture fraction analysis articulated in Hoyt v. Hoyt (1990), 53 Ohio St.3d 177,559 N.E.2d 1292, which would result in her receiving $89,695.70 of Robert's retirement benefits.
 {¶ 12} "Domestic relation courts have broad discretion in fashioning property divisions of the marital estate. Berish v.Berish (1982), 69 Ohio St.2d 18. Consequently, a reviewing court should not reverse a trial court's decision concerning property division absent an abuse of discretion. Briganti v. Briganti
(1984), 9 Ohio St.d 220. A trial court abuses its discretion only when its attitude was demonstrably unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217." Fields v. Fields, Miami App. No. 89-CA-58, 1990 WL 73685, at 2.
 {¶ 13} In Hoyt, the Supreme Court of Ohio stated that "[t]he general rule is that pension or retirement benefits earned during the course of a marriage are marital assets and a factor to be considered * * * in the division of property * * *. However, general rules cannot provide for every contingency and no specific rule can apply in every case. The purpose of the guidelines is to provide a fair and equitable division of property * * * while simultaneously providing the employed spouse with an incentive to continue in the same employment and to enhance his or her pension or retirement benefits. Accordingly, this court holds that when considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result; the trial court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." Hoyt,53 Ohio St.3d at 178-179.
 {¶ 14} The Court then articulated the coverture fraction analysis, as follows:
 {¶ 15} "In a situation involving vested but unmatured retirement benefits, the trial court may reserve jurisdiction and either determine the parties' proportionate shares at the time of the divorce or determine proportionality when the benefits become vested and matured. In determining the proportionality of the pension or retirement benefits, the non-employed spouse, in most instances, is only entitled to share in the actual marital asset. The value of this asset would be determined by computing the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment." Id. at 182.
 {¶ 16} A case similar to the one before us, Kincaid v.Kincaid (1997), 117 Ohio App.3d 148, 149, 690 N.E.2d 47, involved a decree of dissolution and separation agreement, as well as a QDRO that was never filed. In Kincaid, the decree of dissolution was granted in 1989, and the appellant received a lump-sum payment for early retirement in 1993. Id. Pursuant to their separation agreement, the appellee was to receive twenty-five percent of the "ultimate value" of the appellant's retirement benefits. Id. Although the Eleventh District Court of Appeals found that Hoyt was "clearly the law at all relevant times," it affirmed the judgment of the trial court where the trial court "looked to Hoyt only as being illustrative of the policy considerations a trial court should follow in dealing with pensions" and "[i]nstead, the [trial] court based its judgment on its interpretation of the term `ultimate value' as used in the parties' separation agreement." Id. at 150-151. "The [trial] court specifically noted that Hoyt was distinguishable on its facts because it involved a contested divorce action." Id. The court then went on to determine whether the disputed term, "ultimate value," as used in the separation agreement, was ambiguous. Id. at 151.
 {¶ 17} We conclude that Hoyt is distinguishable from this case because it involved a contested divorce decree and a QDRO while this case does not involve a QDRO and involves a decree of dissolution incorporating a separation agreement entered into by the parties. See Hoyt, supra at 183. The separation agreement between the parties provides, in paragraph III(D)(1)(b), that "Wife shall have one-half of Husband's retirement benefits pursuant to Husband's Ohio Bell Deferred Vested Pension accrued through 6/30/88. The division shall be pursuant to a Qualified Domestic Relations Order." A QDRO was not filed. Neither the decree nor the separation agreement mention dividing the retirement benefits using the coverture fraction analysis. We conclude that the determinative issue in this case is the interpretation of the term "accrued through 6/30/88" in the separation agreement.
 {¶ 18} "Since a separation agreement is a contract, its interpretation is a matter of law. It is subject to the same rules of construction as other contracts. Uram v. Uram (Oct. 18, 1989), Summit App. No. 14078, unreported, 1989 WL 122540. The primary principle which courts must follow is that the contract must be interpreted `so as to carry out the intent of the parties * * *.' Skivolocki v. East Ohio Gas Co. (1974),38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus. Pursuant to this rule, it has been held that when a term in an agreement is unambiguous, then the words must be given their plain, ordinary and common meaning[.]" Forstner v.Forstner (1990), 68 Ohio App.3d 367, 372, 588 N.E.2d 285.
 {¶ 19} We conclude that the trial court did not act in an unreasonable, arbitrary, or unconscionable manner in concluding that the term "accrued through 6/30/88" in the separation agreement is neither vague nor ambiguous. Giving the term "accrued through 6/30/88" in the separation agreement its plain, ordinary and common meaning, we conclude that the trial court did not abuse its discretion in concluding that it was the intent of the parties that Robert pay Sharron one-half of his retirement benefits as valued on June 30, 1988. Therefore, we conclude that the trial court did not abuse its discretion in finding that Robert is required to pay Sharron half of $45,664.09, the total account value of Robert's retirement plan on June 30, 1988, plus ten percent interest for the three-year delay, minus the $17,000 he already paid her, which amounts to $12,681.67.
 {¶ 20} Sharron's first assignment of error is overruled.
 III {¶ 21} Sharron's second assignment of error is as follows:
 {¶ 22} "The trial court's dismissal of appellant's motion for contempt is not supported by sufficient evidence and is against the manifest weight of the evidence[.]"
 {¶ 23} Sharron contends that the evidence does not support the conclusion that Robert did not know that Sharron was entitled to a portion of his retirement benefits. Sharron contends that the evidence shows that Robert did know Sharron was entitled to receive a portion of his retirement benefits, and, therefore, Robert should be held in contempt for failing to comply with the terms of the separation agreement by not distributing her share of the retirement benefits to her when he received the lump-sum payment from his retirement plan.
 {¶ 24} "A separation agreement, which contains a property settlement provision, is an order that is enforceable by contempt proceedings. Weaver v. Weaver (1987), 36 Ohio App.3d 210,522 N.E.2d 574, paragraph one of the syllabus. A prima facie case of contempt is made by establishing a prior court order and a violation under its terms. Nielsen v. Meeker (1996),112 Ohio App.3d 448, 679 N.E.2d 28, 31. A court's contempt finding must be supported by clear and convincing evidence. Dozer v. Dozer
(1993), 88 Ohio App.3d 296, 302, 623 N.E.2d 1272, 1276. Absent an abuse of discretion, which implies that the court's reasoning is unreasonable, arbitrary, or unconscionable, we will not reverse the trial court's findings. Id. Neither will we weigh the evidence nor judge credibility of witnesses when reviewing factual findings of the trial court relating to its contempt determinations because both of these functions are solely within the province of the trial court. State v. DeHass (1967),10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus." Porter v. Porter, Montgomery App. No. 19146, 2002-Ohio-3306, 2002 WL 1396034, at 3.
 {¶ 25} In his testimony, Robert admitted, that except for the $17,000, Sharron had received no benefits from his retirement plan. Robert further testified as follows:
 {¶ 26} "Q. Okay. And were you represented by counsel at the time of your dissolution?
 {¶ 27} "A. No, I was not.
 {¶ 28} "Q. Okay. Did you read your separation agreement?
 {¶ 29} "A. I read it and I thought I understood everything, but at the time I was emotionally upset, and I was just trying to cooperate and get everything done, so the dissolution would go through without any — a lot of problems or anything.
 {¶ 30} "Q. Okay. What was your understanding of the pension division at the time of your dissolution?
 {¶ 31} "A. The only thing I can remember about it is — is the asset portions where I remember seeing Sharron's retirement in there and the sum of 37,000 of mine and wondering where they got those figures and why my retirement wasn't in there with hers to be divided up equally at the time.
 {¶ 32} "Q. Okay. And what was your understanding as to what was to happen to your retirement?
 {¶ 33} "A. Retirement was never brought up, so it never crossed my mind and — if anybody had asked me at that time about retirement afterwards, I just said, well, me and Sharron decided to keep each other's retirements, and so I just assumed that everything was settled.
 {¶ 34} "* * *
 {¶ 35} "Q. Mr. Pohl, did you understand all the terms of the dissolution of your separation agreement when you signed it?
 {¶ 36} "A. No, I did not."
 {¶ 37} We will not judge the credibility of Robert when reviewing the trial court's factual findings, relating to its contempt determinations, because this function is within the province of the trial court. See Porter, supra. We conclude that the trial court did not act in an unreasonable, arbitrary, or unconscionable manner in concluding that Robert "did not willfully or knowingly fail to comply with the division of pension," based on Robert's testimony that he was without legal representation at the time of the dissolution and that he believed that all matters pertaining to the property division, including retirement accounts, were fully resolved at the time of the dissolution. We conclude that the trial court did not abuse its discretion in dismissing the motion for contempt.
 {¶ 38} Sharron's second assignment of error is overruled.
 VI {¶ 39} Both of Sharron's assignments of error having been overruled, the judgment of the trial court is affirmed.
Wolff, J., concurs.