OPINION
{¶ 1} In this case, Betty Hendrickson appeals from a trial court judgment clarifying the intended division of retirement funds in the parties' divorce decree, which was filed on November 19, 1992. Betty's ex-husband, Edward Jackson, retired in 2002, and began receiving payments from the Ohio Police and Fireman's Pension Fund (OPFPF) in August, 2002. At that time, Edward began paying Betty $276.50 per month, which was his calculation of one-half the amount of the pension to which he would have been entitled in 1992 ($695 per month), minus applicable state and federal taxes.
 {¶ 2} On July 22, 2004, Betty filed a motion asking that the trial court review Section VII(C)(1) of the divorce decree and determine the value of her interest in Edward's pension. Betty's position was that she was entitled to one-half the pension value at the time of Edward's retirement, with allowance being made for non-marital pension years using a coverture factor. Under this scenario, Betty would be paid about $1,168 per month.
 {¶ 3} After an evidentiary hearing, a magistrate concluded that the language in the decree supported Edward's position. The magistrate thus found that Betty was entitled only to one-half the benefits that Edward had accrued as of September 16, 1992 (the date used in the divorce decree). The magistrate also found that Betty was not entitled to a share of any benefits that were accrued thereafter. However, because Edward had used May 31, 1992, rather than September 16, 1992, to calculate the benefit amount, the magistrate ordered the parties to ascertain the exact benefit as of the latter date.
 {¶ 4} After Betty filed objections to the magistrate's decision, the trial judge filed a decision overruling the objections. The judge agreed with the magistrate that the language in Section VII(C)(1) of the divorce decree was clear and did not entitle Betty to the benefits she sought. Betty now appeals, raising as a single assignment of error that:
 {¶ 5} "The trial court erred in finding `the plain language of [DECREE] Section VIII(C)(1) is clear and ambiguous,' to deny determining Betty's share of Edward's Police Fire Pension Fund retirement using coverture factors."
 {¶ 6} After considering the record and applicable law, we find the assignment of error without merit. Accordingly, the judgment of the trial court will be affirmed.
 I {¶ 7} At the time the divorce decree was filed in this case, both parties were represented by counsel, and had reached agreement about the terms in the decree. Agreements incorporated into divorce decrees are contracts and are subject to the rules of construction governing other contracts. Pavlich v. Pavlich, Summit App. No. 22357, 2005-Ohio-3305, at ¶ 6. Typically, we review contractual questions de novo, except where the contract is ambiguous. Dzina v. Dzina, Cuyahoga App. No. 83148,2004-Ohio-4497, at ¶ 11. The trial court has broad discretion to clarify ambiguities, but whether a contract is ambiguous is a decision that is made as a matter or law. 2005-Ohio-3305, at ¶ 7. If an ambiguity does not exist, the trial court "may not construe, clarify or interpret the parties' agreement to mean anything outside of that which it specifically states." Id.
 {¶ 8} As we mentioned, the trial court found that the divorce decree was clear and unambiguous. The part of the decree in question is Section VII, which covers division of assets. Subsection (C)(1) of Section VII states that:
 {¶ 9} "Husband is a participant in the Police and Fireman's Disability and Pension Fund (`Retirement Plan'). Wife hereby is awarded one-half of any monthly benefit accrued to Husband in said Retirement Plan through September 16, 1992. Husband shall be entitled to all benefit in the Retirement Plan that accrues after September 16, 1992, free of any claim of Wife. Husband shall pay to Wife her portion, pursuant to the foregoing, of any monthly benefit that he receives once it is in `pay status'; provided, however, that if at the time that the account enters `pay status' said total monthly benefit is subject to any income tax to be assessed against Husband, then Husband shall reduce the monthly payment to Wife by an amount equal to the federal, state and local income tax attributable to Wife's pre-tax benefit. * * *"
 {¶ 10} In Pohl v. Pohl, Montgomery App. No. 20001, 2004-Ohio-3790, we considered a similar provision for allocating retirement benefits. The separation agreement in Pohl stated that the wife would be entitled to one-half of her husband's retirement benefits "accrued through 6/30/88." Id. at ¶ 4. The wife later claimed that this provision entitled her to half of a lump sum distribution of about $288,410 that her husband received when he retired in November, 1999. Id. at ¶ s 5-6. In contrast, the husband argued that the wife should receive only one-half the value of the fund as of June 30, 1988, which was approximately $22,832. The trial court agreed with the husband, and awarded the wife the latter amount, plus interest. Id. at ¶ 7.
 {¶ 11} On appeal, we agreed with the trial court, finding that the "plain, common, and ordinary meaning" of the provision was that the wife was entitled to one-half the retirement benefits as they were valued on June 30, 1988. Id. at ¶ 19. If we applied the same reasoning here, Betty would be entitled only to one-half the accrued value of the OPFPF pension on September 16, 1992, or about what Edward elected to pay her after he began receiving benefits.
 {¶ 12} Betty admits that the decree in Pohl contains language that is similar to Section VII(C)(1). However, Betty distinguishes Pohl on these grounds: (1) the husband in Pohl was unrepresented by counsel; (2) a Qualified Domestic Relations Order (QDRO) was never prepared in Pohl,
even though it was ordered; (3) Pohl involved a dissolution, rather than a contested divorce; and (4) the husband in Pohl received a lump sum payment upon retirement. Betty also points out that Pohl was decided before Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 599 N.E.2d 1292, whereas the present case was decided after Hoyt. We find these distinctions irrelevant.
 {¶ 13} As a preliminary point, we note that the result in Pohl had nothing to do with the fact that the husband was unrepresented by counsel, nor was it relevant that the husband took a lump-sum distribution. We also did not rely on the fact that a QDRO had never been prepared. Instead, our decision was based on the unambiguous language of the parties' agreement. 2004-Ohio-3790, at ¶ 19.
 {¶ 14} The fact that Pohl involved a dissolution is relevant, because we used that as a basis for distinguishing Hoyt. Id. at ¶ 17. However, our reason for distinguishing Hoyt was not the form of the particular domestic relations action; it was the fact that the parties had agreed on the terms. Id. Therefore, we applied traditional principles of contractual interpretation to decide the matter. Id. at ¶ 18.
 {¶ 15} In Hoyt, the Ohio Supreme Court established guidelines for trial courts to follow when exercising their discretion to award pension or retirement benefits. 53 Ohio St.3d at 178. In this regard, the Supreme Court said that:
 {¶ 16} "when considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result; the trial court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." Id. at 179.
 {¶ 17} In Hoyt, the Ohio Supreme Court rejected "flat rules" for distribution, stressing instead that trial courts must have flexibility to make equitable decisions. Id. at 180. However, the court did offer guidance on how trial courts could resolve various situations. For example, in cases involving:
 {¶ 18} "vested but unmatured retirement benefits, the trial court may reserve jurisdiction and either determine the parties' proportionate shares at the time of the divorce or determine proportionality when the benefits become vested and matured. In determining the proportionality of the pension or retirement benefits, the non-employed spouse, in most instances, is only entitled to share in the actual marital asset. The value of this asset would be determined by computing the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment." Id. at 182.
 {¶ 19} In the present case, if the trial court had originally allocated the retirement benefits, it would likely have used the method outlined in Hoyt. However, this is not what occurred. Although the case began as a contested divorce, the parties later agreed on terms and conditions, including the property division, and filed a decree reflecting their agreement. Notably, the parties did not allocate retirement benefits as Hoyt had suggested. Instead, they chose to limit Betty's interest to one-half the value of the pension fund as it existed on September 16, 1992.
 {¶ 20} Hoyt was decided nearly two years before the divorce decree in this case was filed, and we must presume that the parties contracted with full knowledge of their rights under the law. See, e.g., Weiker v.Motorists Mut. Ins. Co., 82 Ohio St.3d 182, 187, 1998-Ohio-373,694 N.E.2d 966, citing Middletown v. Ferguson (1986), 25 Ohio St.3d 71,495 N.E.2d 380. Both parties in this case were also represented by counsel. The parties could have used the method suggested in Hoyt, but chose a different way of valuing the retirement funds. This was their right, and we cannot intervene now simply because one side is dissatisfied with a choice that was freely made.
 {¶ 21} We might feel otherwise if the agreement were ambiguous, but it is not. In addition to the unambiguous language that directly restricts Betty's interest to retirement plan value accrued as of September 16, 1992, Section VII(C)(1) of the decree says that "Husband shall be entitled to all benefit in the Retirement Plan that accrues after September 16, 1992, free of any claim of Wife." This language reinforces the intent to restrict Betty's interest to the value of the retirement fund as it existed on September 16, 1992. Again, the parties could have elected a different valuation method, but chose not to do so. See, e.g.,Pohl, 2004-Ohio-3790, at ¶ 17 (distinguishing Hoyt because it involved a contested divorce decree), and Guilmain v. Guilmain (Mar. 27, 1998), Greene App. No. 97 CA 97, 1998 WL 404022 (finding Hoyt inapplicable where the parties agreed on a different calculation and included it in the divorce decree).
 {¶ 22} As in Pohl, the value that Betty and Edward used was a result of their own agreement. Despite this fact, Betty contends that we should distinguish between a separation agreement that parties have had a month or more to ponder, and a "spur-of-the-moment" hallway settlement that is read into the record and later incorporated into a divorce decree. We reject this invitation, because the methods of reaching or transcribing agreements are generally irrelevant. The important consideration is that by agreeing, parties choose their course. Even if an agreement is reached the day of a scheduled trial or hearing, it may still be the product of lengthy research, negotiation, and thought about possible alternatives. In fact, cases are frequently settled on the eve of trial or at the courtroom door. The sanctity of agreements (and the chaos that would be introduced if they could easily be set aside) are why parties normally cannot present extrinsic evidence of contractual intent. As the Ohio Supreme Court has said:
 {¶ 23} "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. * * * A court will resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." Kelly v. Medical Life Ins. Co.
(1987), 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (citations omitted).
 {¶ 24} Because Section VII(C)(1) of the divorce decree is clear and unambiguous, and no circumstances invest the language in the agreement with a special meaning, there is no reason to inquire into the parties' intent. Accordingly, since we agree with the trial court's interpretation of the decree, the single assignment of error is without merit.
 {¶ 25} Based on the preceding discussion, the single assignment of error is overruled, and the judgment of the trial court is affirmed.
Wolff, J., concurs.