OPINION
{¶ 1} Defendant-appellant Betty Hendrickson appeals from an order of the trial court dismissing her Civ. R. 60(B) motion for relief from judgment. The court dismissed the motion after finding that Hendrickson failed to file under Civ. R. 60(B)(4) or (5) within a reasonable time. Hendrickson contends that the trial court erred in dismissing the motion because she filed within thirty days after a decision from our court in a prior *Page 2 
appeal, in which a concurring opinion contained a suggestion that she might file a motion for relief from judgment.
 {¶ 2} We conclude that the trial court did not abuse its discretion. Relief under Civ. R. 60(B)(4) is not warranted because Hendrickson had an opportunity to control the outcome of the case in 1992, when she agreed to a particular division of pension benefits, and nothing unforeseen has occurred to render the prospective application of that agreed judgment no longer equitable. Furthermore, based on the grounds alleged, the motion was not properly brought under Civ. R. 60(B)(5) — the "catch-all" provision. Hendrickson has raised excusable neglect and misconduct of an adverse party, which are grounds for relief under Civ. R. 60(B)(1) and (3). Finally, even if Civ. R. 60(B)(5) could apply, Hendrickson's motion was untimely. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} This appeal arises from a divorce decree filed in 1992. The parties were married in 1972, and Hendrickson was not employed outside the home until around 1987, when she returned to work part-time. By the time of the divorce, Hendrickson had been working outside the home for almost six years and had accumulated social security income credits for those earnings. Hendrickson also had begun participating in the MedAmerica Health Systems Corporation Employees Retirement Plan (MedAmerica Plan) on December 1, 1989. Hendrickson's husband, Edward Jackson, was employed by the Dayton Police Department for sixteen years during the marriage and was a participant in the Police and Firemen's Disability and Pension Fund (Fund). Both parties *Page 3 
were around 38 years of age at the time of the divorce.
 {¶ 4} The final divorce hearing in this case was originally scheduled for August 1992, but ultimately took place in September 1992. Prior to that time, in June 1992, Jackson signed an authorization allowing the Fund to release information to his attorney, Charles Lowe. The authorization included any information about the monthly allowance Jackson had accrued in the Fund and a statement of Jackson's monthly expectancy at age 48 if Jackson had terminated his employment as of June 30, 1992.
 {¶ 5} In late June, 1992, the Fund sent Lowe a letter responding to the inquiry about Jackson's interest in the Fund. The letter indicated that Jackson had no "vested" benefits at that time. However, the letter noted that if Jackson had severed employment as of May 31, 1992, and did not withdraw his accumulated account, he would be entitled to receive $695 per month under the single life annuity plan. This pension would be payable the day following Jackson's attainment of age 48, or on July 7, 2002.
 {¶ 6} Lowe forwarded the letter from the Fund to Hendrickson's attorney on July 29, 1992. At the request of Hendrickson or her attorney, James Rion, the trial set for August 12, 1992, was subsequently continued and was rescheduled for September 16, 1992. At the time of the final hearing in September 1992, the parties negotiated outside the courtroom and then read an agreement into the record, settling all disputes as to property division, child support, and other issues. The divorce decree was subsequently filed in November 1992.
 {¶ 7} Section VII(C)(1) of the decree awarded Hendrickson a share of Jackson's retirement fund, as follows:
 {¶ 8} "Husband is a participant in the Police and Firemen's Disability and *Page 4 
Pension Fund (`Retirement Plan'). Wife hereby is awarded one-half of any monthly benefit accrued to Husband in said Retirement Plan through September 16, 1992. Husband shall be entitled to all benefit in the Retirement Plan that accrues after September 16, 1992, free of any claim of Wife. Husband shall pay to Wife her portion, pursuant to the foregoing, of any monthly benefit that he receives once it is in `pay status'; provided, however, that if at the time that the account enters `pay status' said total monthly benefit is subject to any income tax to be assessed against Husband, then Husband shall reduce the monthly payment to Wife by an amount equal to the federal, state, and local income tax attributable to Wife's pre-tax benefit."
 {¶ 9} Jackson waived any interest in Hendrickson's retirement funds and they were, therefore, not included in the decree. Jackson also agreed to pay the outstanding debts of the parties, which amounted to approximately $4,000. The parties split the remaining marital property equally, except that Hendrickson retained the household goods and furnishings.
 {¶ 10} Jackson retired in 2002, and received his first pension check in August 2002. Lowe wrote to Hendrickson in September 2002, informing her that Jackson had retired and that her share of the pension, based on the $695 accrued through May 1992, would be $347, less appropriate state and federal taxes. The amount after tax was $276.50, and Jackson began paying Hendrickson that amount directly.
 {¶ 11} Hendrickson was very upset when she was informed of the pension amount. After receiving the $276.50 payments for almost two years, Hendrickson filed a motion asking the trial court to review Section VII(C)(1) of the divorce decree and determine the value of her interest in the pension. After an evidentiary hearing, the trial *Page 5 
court found that the decree was unambiguous and that Hendickson was entitled only to one-half of the benefits that had accrued as of September 16, 1992. Because Jackson had used an earlier date of May 31, 1992, the trial court ordered that the benefit amount be determined as of the later date.
 {¶ 12} Following Hendrickson's appeal, we affirmed the order of the trial court in September 2005. Jackson v. Hendrickson, Montgomery App. No. 20866, 2005-Ohio-5321 (Jackson I). All three members of the appellate panel agreed that the terms of the 1992 divorce decree were unambiguous and did not entitle Hendrickson to a larger share of the pension. Id. at ¶ 21 and ¶ 26-37 (Grady, J., concurring). In his concurring opinion, Judge Grady concluded that because Hendickson's motion was simply one to construe the decree, the lack of ambiguity in the decree curtailed any further inquiry into Hendrickson's "more fundamental contention, which was that * * * the division of * * * Jackson's retirement account ordered in the decree was unjust." Id. at ¶ 27.
 {¶ 13} Judge Grady concluded that the division of the retirement benefit ordered by the trial court in this case was contrary to our prior decision in Layne v. Layne (1992), 83 Ohio App.3d 559,615 N.E.2d 332, which had held that:
 {¶ 14} "when the domestic relations court divides a contributory retirement account prior to retirement the court should not attempt to arrive at a hypothetical current value to divide. Instead, the court should divide the parties' rights to the benefit paid at retirement in proportion to the years of marriage. That approach applies the coverture factor endorsed in Hoyt v. Hoyt (1990), 53 Ohio St.3d 177,559 N.E.2d 1292. Further, it allows the value of the non-employee former spouse's share to grow in a way consistent with the parties' expectations when they made their joint investment, which was that its *Page 6 
value would increase with the employee's years of service until he or she draws the retirement benefit.
 {¶ 15} "The particular division the court ordered in the present case is contrary to our holding in Layne. Instead of dividing rights, the court divided a `benefit.' And, by identifying it as the benefit that had by then `accrued,' the court ordered a present value division. The result denies Betty R. Hendrickson the full value to which she is entitled." Jackson I, 2005-Ohio-5231, at ¶ 28-29.
 {¶ 16} Judge Grady also suggested the possibility that Hendrickson might file a motion for relief from judgment:
 {¶ 17} "The motion that Betty R. Hendrickson filed was not improper, because courts have an inherent power to construe their own judgments. Even though she obviously had hoped for a more favorable result, that's all she asked the court to do, and that's all the court then did. Now, any relief from the provisions of the decree as the court construed it is available to Betty R. Hendrickson only through Civ. R. 60(B)(5); remembering, however, that the rule cannot be used to vacate a final judgment if one of the more specific provisions of Civ. R. 60(B)(1)-(3) applies. * * * Nevertheless, Civ. R. 60(B)(5) is intended to function as a `catch-all provision' that `reflects the inherent power of a court to relieve a person from the unjust operation of a judgment.' * * * The Supreme Court has endorsed that view. * * *
 {¶ 18} "As it is written and necessarily applied, the domestic relations court's 1992 decree orders an unjust division of Edward's retirement account. Betty R. Hendrickson is shortchanged by an award of one-half the value of the `benefit' that had accrued when the parties were divorced, which is approximately the amount of $276.50 *Page 7 
per month that Edward D. Jackson pays her. She is instead entitled to approximately $1,168, which is one-half the fractional amount of his pension payment represented by the number of years he participated in the plan while the parties were married, divided by his years of service credit at retirement. There is no discernible reason she would have turned down the greater amount to get the lesser. A Civ. R. 60(B)(5) motion asking the court to vacate that portion of the divorce decree is therefore in order." Id. at ¶ 33-34 (citations omitted).
 {¶ 19} Our decision was issued in late September 2005, and Hendrickson took Judge Grady's suggestion shortly thereafter, by filing a motion with the trial court for relief from judgment under Civ. R. 60(B)(4) and (5). An evidentiary hearing was held in March 2006, and the magistrate issued a decision in June 2006, rejecting the motion. The magistrate found that the language of the agreement was unambiguous and that the parties intended to limit Hendrickson's interest in the retirement plan to those benefits that had accrued by September 16, 1992. The magistrate indicated that Hendrickson did not claim that she was unable to discover the value of the pension or that Jackson had secreted information that made the agreement uninformed. Instead, exhibits were presented indicating that both parties had full access to information from the Fund during the course of the divorce and that Hendrickson was fully informed as to the value of the pension. The magistrate also concluded that Hendrickson failed to demonstrate a meritorious defense. The magistrate noted that Hendrickson seemed to suggest that she did not fully understand what she was agreeing to at the time. But Hendrickson did not demonstrate that she failed to understand the agreement. The magistrate further observed that if Hendrickson had asserted any defense, it would have *Page 8 
been excusable neglect or mistake, which should have been brought within one year under Civ. R. 60(B)(1).
 {¶ 20} Hendrickson filed timely objections to the magistrate's decision. In particular, Hendrickson contended that the magistrate ignored Hendrickson's own testimony that she had contacted the Fund and was told that nothing could be determined until Jackson retired. Hendrickson also objected to the fact that the magistrate refused to follow the Layne decision and the concurring opinion in Jackson I.
 {¶ 21} The trial court subsequently overruled the objections, finding that Hendrickson did not file under Civ. R. 60(B)(4) or (5) within a reasonable time because she failed to file a motion until thirteen years after the divorce decree was entered. Accordingly, the trial court dismissed the motion for relief from judgment. Hendrickson appeals from the order dismissing her motion for relief from judgment.
 II {¶ 22} Hendrickson's First Assignment of Error is as follows:
 {¶ 23} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT, BETTY R. HENDRICKSON'S, CALLED BETTY, RULE 60(B)(4) MOTION FOR RELIEF FROM FINAL JUDGMENT AND DECREE OF DIVORCE ENTERED NOVEMBER 19, 1992."
 {¶ 24} Under this assignment of error, Hendrickson contends that the trial court decision is erroneous because the court did not refer to any testimony from the evidentiary hearing, and considered only the length of time between the final decree and the filing of the Civ. R. 60(B) motion. Hendrickson notes that her motion was filed *Page 9 
approximately one month after Judge Grady's suggestion in JacksonI. Hendrickson also claims that the present case arose due to 2002 statutory changes that established "Division of Property Orders" in divorces actions and made it possible for her to file a motion to establish a division of the property order that had been entered in the divorce ten years earlier.
 {¶ 25} Civ. R. 60(B) allows trial courts to relieve parties or their legal representatives from a final judgment for the following reasons:
 {¶ 26} "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken."
 {¶ 27} "To prevail on a motion brought under Civ. R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." GTE AutomaticElec, Inc. v. ARC *Page 10 Industries, Inc. (1976), 47 Ohio St.2d 146, 351 N.E.2d 113, at paragraph two of the syllabus.
 {¶ 28} "These requirements are independent and in the conjunctive; thus the test is not fulfilled if any one of the requirements is not met." Strack v. Pelton, 70 Ohio St.3d 172, 174, 1994-Ohio-107,637 N.E.2d 914, 915. Motions for relief from judgment under Civ. R. 60(B) are addressed to the sound discretion of the trial court, and the court's ruling "will not be disturbed on appeal absent a showing of abuse of discretion." Griffey v. Rajan (1987), 33 Ohio St.3d 75, 77,514 N.E.2d 1122,1123-24.
 {¶ 29} The Ohio Supreme Court has stressed that Civ. R. 60(B)(4) "was designed to provide relief to those who have been prospectively subjected to circumstances which they had no opportunity to foresee or control." Knapp v. Knapp, 24 Ohio St.3d 141, 146, 493 N.E.2d 1353, 1357. "In other words, Civ. R. 60(B)(4) was not meant to offer a party a means to negate a prior finding that the party could have reasonably prevented." Cuyahoga Support Enforcement Agency v. Guthrie,84 Ohio St.3d 437, 443, 1999-Ohio-362, 705 N.E.2d 318, 323. Furthermore, the movant has the burden of demonstrating that the motion was filed within a reasonable time. Tabor v. Tabor, Mahoning App. No. 02-CA-73, 2003-Ohio-1432, at ¶ 19, citing Adomeit v. Baltimore (1974),39 Ohio App.2d 97, 103, 316 N.E.2d 469. This requirement is based on the interest in preserving the finality and sanctity of judgments, and the protection of non-moving parties from "the prejudice caused by opening a judgment after a long delay." 2003-Ohio-1432, at ¶ 20.
 {¶ 30} Factors that should be considered in making an assessment of reasonableness include "the absolute length of time before the Civ. R. 60(B) motion is filed, what caused the delay in making the motion, whether the delay was reasonable, *Page 11 
the burden on the nonmoving party of asserting its claim after relief has been granted, the likelihood the movant will prevail on the merits of the motion, what has intervened between the judgment and the motion, and the individual equities involved if the motion is meritorious." Id. at ¶ 29 (citations omitted).
 {¶ 31} In a situation nearly identical to the present case, the Fourth District Court of Appeals refused to allow relief from a division of retirement benefits. Tabor, 2003-Ohio-1432. Specifically, the division of benefits in Tabor was based on an unambiguous oral agreement that was read into the record, and the decree was filed fifteen years before the motion for relief from judgment was filed. Id. at ¶ 2-3. The Fourth District found that the motion was untimely and that the wife, who sought additional pension benefits, did not have a meritorious claim. Id. at ¶ 29. In particular, the Fourth District noted that:
 {¶ 32} "it was clearly foreseeable that Herbert [the husband] may actually receive more from the pension than the amount the parties estimated at the time of the divorce decree. Christy [the wife] had a reasonable opportunity at the time of the divorce to ensure the divorce decree accurately reflected the parties' agreement. This is, of course, tied into the timeliness of her motion. For instance, if it had been filed within a year of the judgment, then she could have argued the trial court made a mistake when drafting the entry. See Civ. R. 60(B)(1). However, this is not an adequate basis for granting relief from judgment pursuant to Civ. R. 60(B)(4)."
 {¶ 33} We agree with Tabor. When the decree was filed in the present case, the parties could easily have foreseen that Jackson would receive more from his pension than the present value of the account. In fact, existing case law awarded spouses *Page 12 
benefits in retirement pensions that had accrued during marriage, plus increases in the benefit amount due to the other spouse's post-decree employment. See, e.g., Campitelli v. Campitelli (1989),65 Ohio App.3d 307, 310, 583 N.E.2d 1322 (upholding award to wife that included benefits during marriage as well as increase in benefit attributed to husband's post-decree employment). Our own court made the following comments in 1990, when we rejected a claim that a trial court had erred in failing to restrict division of a pension to a percentage of the book value of the pension at the time of the divorce:
 {¶ 34} "We reject Appellant's argument that the form of division adopted awards non-marital property to Appellee. The value of Appellee's share will grow as Appellant continues active employment after divorce. Her proportion of the pension will not change, and remains fixed according to the years of marriage. A retirement plan of this type represents an investment, and Appellee is entitled to share in its matured value at the time of retirement. The purpose of the plan is to provide for the parties at retirement, and both must be presumed to have made their investment on that basis. It would be inequitable to terminate Appellee's interest early and to deprive her of that right.
 {¶ 35} "The fact-intensive nature of domestic relations disputes requires that trial courts have wide latitude in fixing equitable divisions of the marital estate. We decline to adopt a fixed method of pension fund division because such a stance restricts the necessary discretion of the trial court. We choose to leave such matters as the method of division to employ in a particular case to the discretion of the trial court." Fields v. Fields (June 14, 1990), Miami App. No. 89-CA-58, 1990 WL 73685, *2.
 {¶ 36} Accordingly, in 1992, there were no barriers preventing a spouse from *Page 13 
claiming a portion of a retirement benefit that would include increases due to post-decree employment. Hendrickson failed to negotiate such a claim, but this is "a prior finding that the party could have reasonably prevented." Guthrie, 84 Ohio St.3d 437, 443.
 {¶ 37} We also note that the present case involves an agreement between the parties, not a division by court order following a contested divorce hearing. Therefore, contrary to the suggestion of the concurring opinion in Jackson I, the trial court did not fail, in 1992, to follow case law specifying certain divisions of pension benefits — the court simply approved a decree that had been agreed to, and prepared by, the parties. See Jackson I, 2005-Ohio-5231, at ¶ 28-29 (Grady, J., concurring), discussing Layne v. Layne (1992), 83 Ohio App.3d 559,615 N.E.2d 332.
 {¶ 38} Hendrickson also contends that this case arose because 2002 amendments to R.C. 3105.80 to R.C. 3105.90 changed circumstances for members of the Fund and established "Division of Property Orders" in divorce actions. Hendrickson claims that after the long delay of ten years between the divorce decree and Jackson's retirement, Jackson "finally authorized" Hendrickson to secure necessary information from the Fund that she needed to file a motion to establish a division of property order.
 {¶ 39} These contentions are irrelevant for several reasons. In the first place, Hendrickson's counsel was given all existing information in 1992, concerning the value of Jackson's interest in the Fund. Nothing was concealed. Hendrickson's attorney was informed of the present value of Jackson's interest and knew of Jackson's potential retirement date ten years later. The fact that the Fund was not then subject to a qualified domestic relations order did not prevent Hendrickson from seeking a property *Page 14 
interest in the pension that would have included increases attributable to post-decree employment. If the parties had not reached a settlement agreement, nothing would have prevented Hendrickson from requesting an appropriate award from the trial court. As we noted, the case law permitting this was in effect for some time before 1992. Consequently, Hendrickson had the opportunity to foresee and control the division of the retirement fund, regardless of whether a qualified domestic relations order could have been issued to the Fund.
 {¶ 40} As an additional matter, we note that the Ohio Supreme Court held in May, 2001, that:
 {¶ 41} "A domestic relations order requiring the Ohio Police Fire Pension Fund to pay directly to a member's former spouse that portion of the member's monthly benefit that represents the former spouse's property pursuant to a division of marital assets does not violate the terms of the administration of the fund." Erb v. Erb, 91 Ohio St.3d 503,2001-Ohio-104, 747 N.E.2d 230.
 {¶ 42} The Ohio Supreme Court also noted in Erb that the General Assembly had enacted amendments to R.C. Chapters 742 and 3105, effective January 1, 2002, that would authorize the issuance of qualified domestic relations orders (QDROs) to persons like ex-spouses who had property interests in the Fund. 91 Ohio St.3d at 508. The court further held inErb that orders issued prior to January 1, 2002, could be modified after that date "to permit direct payments to alternate payees." Id. at 509.
 {¶ 43} For purposes of the present case, this means that Hendrickson could have applied to the trial court at any point after January 1, 2002, for a modification of the existing order that would designate her as an alternate payee. Hendrickson was, *Page 15 
therefore, not dependent on the release of information from Jackson, at least at any time after January 1, 2002. However, Hendrickson waited more than two years, or until July, 2004, to file a motion with the trial court, asking the court to construe the terms of the decree and issue a modified order. There was no explanation for this delay, but it is not based on the fact that Jackson "finally" authorized information from the Fund, nor is it a function of the 2002 amendments authorizing issuance of QDROs to ex-spouses of public employees. Hendrickson could have obtained the information and orders she needed as early as January 2002.
 {¶ 44} Hendrickson also waited more than another year, or until November 2005, to file a motion for relief from judgment. This occurred after her unsuccessful appeal and the suggestion in a concurring opinion as to a remedy she might pursue. However, Hendrickson did not need to be informed by the court of appeals of alternate theories under which she could proceed — she or her attorney should have been aware of the potential remedies at the outset.
 {¶ 45} In any event, Civ. R. 60(B)(4) is not a proper remedy, because Hendrickson had an opportunity to control the circumstances in 1992, when she agreed to divide the pension. Knapp, 24 Ohio St.3d 141, 146, and Guthrie, 84 Ohio St.3d 437, 443.
 {¶ 46} Accordingly, Hendrickson's First Assignment of Error is overruled.
 III {¶ 47} Hendrickson's Second Assignment of Error is as follows:
 {¶ 48} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT, BETTY J. *Page 16 
HENDRICKSON'S, CALLED BETTY, RULE 60(B)(5) MOTION FOR RELIEF FROM JUDGMENT ENTERED NOVEMBER 19, 1992."
 {¶ 49} This assignment of error is based on the contention that the trial court ignored Hendrickson's testimony, which suggested that she could not fully discover the value of the pension in 1992. Hendrickson additionally contends that the trial court abused its discretion by ignoring testimony about Jackson's intimidation of her on the day of the original divorce hearing, when the parties agreed on how they would divide the pension. According to Hendrickson, the trial court would have granted the motion for relief from judgment under Civ. R. 60(B)(5) if it had considered these facts.
 {¶ 50} Hendrickson also relies on the concurring opinion inJackson I, which opined that there was "no discernible reason" why Hendrickson would have turned down half of the fractional amount of Jackson's pension payment represented by the number of years Jackson participated, divided by his years of service at retirement ($1,168), in order to obtain the lesser amount of half of the benefit that had accrued when the parties were divorced ($276.50). Jackson I,2005-Ohio-5231, at ¶ 34 (Grady, J., concurring).
 {¶ 51} The Ohio Supreme Court has stressed that Civ. R. 60(B)(5) is "a catch-all provision reflecting the inherent power of a court to relieve a person from the unjust operation of a judgment, but it is not to be used as a substitute for any of the other more specific provisions of Civ.R. 60(B)." Caruso-Ciresi, Inc. v. Lohman (1983), 5 Ohio St.3d 64,448 N.E.2d 1365, at paragraph one of the syllabus. Thus, a party cannot use Civ. R. 60(B)(5) to circumvent the one-year limitation by duplicating grounds that are subject to the limitation. Hamlin v.Hamlin, Darke App. No. 1629, 2004-Ohio-2742, at ¶ 19. The grounds for invoking Civ. R. 60(B)(5) must also be substantial.Caruso-Ciresi, *Page 17 5 Ohio St.3d 64, at paragraph two of the syllabus.
 {¶ 52} We review rulings on motions for relief from judgment for abuse of discretion. Moore v. Moore, 158 Ohio App.3d 489, 491, 2004-Ohio-5293,817 N.E.2d 111, 112, at ¶ 8. An abuse of discretion means that the trial court's attitude "is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140,1142.
 {¶ 53} After reviewing the record in the present case, we conclude that the trial court did not abuse its discretion. As an initial matter, we conclude that Hendrickson's allegations fall within the categories of mistake or excusable neglect and misconduct of an adverse party, which are grounds for relief from judgment under Civ. R. 60(B)(1) or (3). Therefore, resort to the "catch-all" provision of Civ. R. 60(B)(5) is not appropriate. Examples of reasons justifying relief under Civ. R. 60(B)(5) are errors or omissions of the court. See, e.g., State ex rel.Gyurcsik v. Angelotta (1977), 50 Ohio St.2d 345, 347, 364 N.E.2d 284,285. The Ohio Supreme Court has further said that a "judge's participation in a case which gives rise to the appearance of impropriety and possible bias could constitute grounds for relief under Civ. R. 60(B)(5)." Volodkevich v. Volodkevich (1988), 35 Ohio St.3d 152,154, 518 N.E.2d 1208, 1211. Fraud perpetrated on the court is also a ground for relief under Civ. R. 60(B)(5), whereas fraud between parties is properly brought under Civ. R. 60(B)(3). See Hash (Krumm) v.Hash (May 1, 1998), Montgomery App. No. 16855, 1998 WL 211893, *4-5.
 {¶ 54} The present case does not involve error or bias by a court, nor does it involve fraud on the court. In fact, the present case does not even involve fraud between parties. Instead, Hendrickson's allegations raise issues of excusable neglect *Page 18 
or misconduct at the time of the original divorce hearing, which are grounds for relief under Civ. R. 60(B)(1) and (3). Hendrickson contends, however, that we should find that a "unique type of intimidation" was present, as the Tenth District Court of Appeals did in McSweeney v.McSweeney (1996), 112 Ohio App.3d 355, 359, 678 N.E.2d 969, 972.
 {¶ 55} In McSweeney, an ex-wife filed a motion for relief from judgment under Civ. R. 60(B)(2) and (3) less than one year after the filing of a dissolution decree, claiming fraud and newly discovered evidence regarding marital assets. The trial court found that full disclosure of assets had not been made and that a "unique type of intimidation was present." Id. at 360. Among other things, the ex-wife had testified that:
 {¶ 56} "appellant [the ex-husband] wielded such a strong influence over her that she agreed to the separation agreement's terms under duress. Appellee [the ex-wife] testified to a history of verbal and physical abuse during the marriage, usually after appellant had been drinking. Also, due to appellant's position of authority over her at work and comments he had made, appellee feared that she might lose her job, or that appellant would make things difficult for her at work. Appellee stated that, while she had reservations, she signed the separation agreement because she had been intimidated for so long." Id.
 {¶ 57} Notably, the wife in McSweeney was not represented by counsel during the original proceedings. The only attorney who appeared in the case was a social friend of both parties and had represented them both in prior matters. Furthermore, this attorney had originally been retained to represent both parties, and failed to tell the wife until the day she signed the separation agreement that he only represented her *Page 19 
husband. Id. at 361. Based on the above facts, the trial court granted the motion for relief from judgment, and the Tenth District affirmed the decision. Id.
 {¶ 58} As evidence of "unique intimidation" present in 1992, Hendrickson points to testimony about events that occurred when she came to court on the day of the final hearing. At that time, Hendrickson was placed in a room and a deputy sheriff emptied her purse. This was done because Jackson had claimed that Hendrickson had threatened to kill him. Hendrickson stated that she was upset and crying that day, and that she believed her attorney must have known she was upset, even though she did not specifically tell him. Hendrickson stated that although she was upset, she did not ask for a continuance because she did not know she was entitled to make such a request.
 {¶ 59} Jackson agreed that he had alerted the police about a threat. He stated that Hendrickson had not threatened him directly, but had made threatening comments about him to her family. Jackson testified that he was alarmed enough to ask court deputies to secure the courtroom before the divorce hearing.
 {¶ 60} The magistrate did not specifically address this issue. However, the magistrate concluded that both sides had been represented by counsel and had full access to information from the Fund. The magistrate also concluded that Hendrickson was fully informed about the pension. After reviewing Hendrickson's objections, the magistrate's decision, and the record, including the transcript of the hearing, the trial court concluded that the motion for relief under Civ. R. 60(B)(4) and (5) was filed thirteen years after the divorce hearing, and was not made within a reasonable time.
 {¶ 61} After reviewing McSweeney, we find no reason to reverse the trial court's decision. An initial point of difference is thatMcSweeney did not involve Civ. R. *Page 20 
60(B)(5). Instead, the motion in that case was brought under Civ. R. 60(B)(2) and (3) and was timely, since it was filed less than a year after the decree was entered. This is far different from a motion brought under Civ. R.60(B)(5), thirteen years after the original decree, and on grounds that improperly duplicate those in Civ. R. 60(B)(1) and (3).
 {¶ 62} In addition, significant factual differences exist betweenMcSweeney and the present case. Unlike the wife in McSweeney, Hendrickson was represented by her own counsel at all times during the original divorce proceedings. Hendrickson also made no claims of a history of physical and verbal abuse, nor did she fear loss of her employment if she disagreed with Jackson. Furthermore, unlike the husband in McSweeney, Jackson made full disclosure of available pension information to Hendrickson's attorney.
 {¶ 63} Although Hendrickson claims that she contacted the Fund during the summer of 1992, and was told that the monetary amount could not be determined until Jackson retired, this is not inconsistent with the information given to Hendrickson's attorney. The ultimate amount of Jackson's pension could not be determined in 1992, because the final amount would be based on Jackson's earnings during his highest three years of employment, which were likely to occur after the divorce. The calculations that could be made were given to Hendrickson's attorney prior to the final divorce hearing. And, as we mentioned earlier, Jackson waived any interest in Hendrickson's Social Security pension or her existing retirement account with MedAmerica, meaning that there may have been consideration for Hendrickson's choice to accept the present *Page 21 
value of the pension.[1]
 {¶ 64} We do note that in Quebodeaux v. Quebodeaux (1995),102 Ohio App.3d 502, 505, 657 N.E.2d 539, 541, the Ninth District Court of Appeals considered a claim of duress under Civ. R. 60(B)(5). It is unclear why this branch of Civ. R. 60(B) was used, since the motion for relief from judgment was filed within two months of a dissolution decree. Misconduct of an adverse party under Civ. R. 60(B)(3) is more specific and would include misconduct like duress or coercion. Nonetheless, even if we assume for the sake of argument that "duress" is not included within Civ. R. 60(B)(3), and that Civ. R. 60(B)(5) could apply, we would still find no abuse of discretion by the trial court.
 {¶ 65} In Quebodeaux, the Ninth District listed the following three elements required for establishing duress: "first, that one side involuntarily accepted the terms of another; second, that circumstances permitted no other alternative; and third, that the opposite party's coercive acts caused those circumstances." Id.
 {¶ 66} In finding that duress existed and warranted setting aside the decree, the Ninth District relied on the wife's testimony, which indicated that her husband had threatened to take all three of their children from her and have her declared an unfit mother if she did not assent to the agreement. The wife also testified to repeated acts of threatened and actual abuse during the marriage. In addition, the wife was not represented by an attorney and the separation agreement, which was very unfair to the wife, was drafted by the husband and his attorney. Id. *Page 22 
 {¶ 67} Again, these are far different facts than those that exist in the present case. There was no suggestion of abuse, and Hendrickson was represented by her own counsel at all times.
 {¶ 68} We also note that even after receiving her share of the pension in September 2002, and being very upset, Hendrickson waited more than three years to file a motion for relief from judgment. The fact that the case was being litigated during this time is not a reason to excuse the delay. As we mentioned, Hendrickson waited almost two years after receiving payment before filing her earlier motion requesting clarification of the property division. There was no reason for this delay.
 {¶ 69} Accordingly, even if "duress" is separate from "misconduct" under Civ. R. 60(B)(3), Hendrickson has failed to establish under Civ. R. 60(B)(5) either that she is entitled to relief on grounds of duress, or that her motion was made within a reasonable time. GTE AutomaticElec, Inc., (1976), 47 Ohio St.2d 146, 351 N.E.2d 113, at paragraph two of the syllabus.
 {¶ 70} Hendrickson's Second Assignment of Error is overruled.
 IV {¶ 71} Both of Hendrickson's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN, J., concurs.
[1] The fact that Hendrickson had accumulated retirement funds with Social Security and MedAmerica was not apparent from the record on appeal at the time of our decision in Jackson I.