OPINION
{¶ 1} This matter comes before the court on an appeal by Saundra Hamlin and a cross appeal by David Hamlin from the trial court's decision and entry adopting, over objections, a magistrate's decision that resolved certain issues concerning the parties' retirement pensions.
 {¶ 2} In her sole assignment of error, Saundra contends the trial court erred in ordering a second QDRO that divided Part B of David's General Motors pension without also determining her entitlement to survivor and early retirement benefits under the GM pension.[1]
 {¶ 3} In his cross appeal, David advances three assignments of error. First, he claims the trial court erred in failing to enforce a purported agreement that resolved all issues between the parties. Second, he contends the trial court erred in refusing to consider vested retirement benefits earned by Saundra during the parties' marriage. Third, he argues that the trial court's formula for dividing Part B of his pension is against the manifest weight of the evidence.
 Factual and Procedural Background {¶ 4} The parties were divorced in 1990. The divorce decree provides, inter alia, "that David Hamlin's retirement benefits from General Motors should be subject to a QDRO whereby Saundra shall receive her proportionate share of the benefits, based upon the date David begins receiving the benefits." The divorce decree also states that Saundra's retirement benefits consist of Social Security.
 {¶ 5} David's GM retirement plan is a Salaried Employees Contribution Plan. It has two components. Part A is "non-contributory," and Part B is "contributory." This means that GM makes all contributions to Part A, and the employee makes the contributions to Part B. In March, 1995, the parties negotiated a QDRO dividing David's retirement plan. The GM plan administrator subsequently interpreted the QDRO as applying only to Part A. In response, Saundra moved for clarification of the QDRO. In December, 1998, the trial court ordered the preparation of a new QDRO dividing both Part A and Part B between the parties. David appealed that ruling. In Hamlin v. Hamlin (June 18, 1999), Darke App. No. 99-CA-1484, we agreed with the trial court's finding that Saundra was entitled to a share of Part A and Part B. We also upheld the formula that the trial court used to divide the parties' respective interests in Part A. With regard to Part B, however, we held that the trial court's formula erroneously swept into Saundra's share a portion of the contributions that David made after the divorce. As a result, we remanded the case for the trial court to divide Part B properly.
 {¶ 6} While the matter was pending in the trial court, David moved for clarification of the QDRO. In particular, he asserted the discovery of evidence that Saundra had obtained her own vested retirement benefits during the parties' marriage, and he argued that those benefits should be considered in the QDRO dividing his GM pension.
 {¶ 7} The trial court scheduled an October 2, 2001, hearing to address the remanded issue concerning the proper division of Part B and David's clarification motion regarding Saundra's own retirement benefits. Prior to the hearing, the parties attempted to negotiate a settlement. The negotiations resulted in the preparation of a proposed agreed judgment entry. David's counsel then prepared a second proposed entry incorporating various changes. David signed the second proposed entry along with his attorney and Saundra's counsel. Saundra refused to sign the entry, however, because she was concerned that it waived her right to survivor benefits under David's GM pension. David subsequently sought to have the proposed agreed judgment entry enforced as a contract between the parties. Following a hearing on the matter, a magistrate ruled that no enforceable contract existed. The trial court adopted the magistrate's decision over David's objection, and we dismissed an appeal for lack of a final, appealable order.
 {¶ 8} A magistrate then held a January, 2003, hearing on the remanded issue concerning proper division of Part B of David's GM pension and on David's motion for clarification of the QDRO regarding Saundra's own retirement benefits. At the outset of the hearing, Saundra's counsel also sought to raise the issue of her entitlement to survivor benefits under David's GM pension. David's counsel objected on the basis that the issue was not before the court, as no motion concerning survivor benefits ever had been filed. In the interest of judicial economy, the magistrate agreed to hear testimony about survivor benefits, while reserving judgment on whether the issue properly had been raised. David's attorney also elicited testimony about the proposed agreed judgment entry that had been drafted in October, 2001.
 {¶ 9} On April 9, 2003, the magistrate filed a decision and order addressing each of the foregoing issues. First, the magistrate declined to deviate from her prior ruling that the proposed entry was not an enforceable contract. Second, she set forth a new formula for dividing Part B of David's GM pension. Third, she held that David's motion to clarify the QDRO was really an untimely Civ.R. 60(B) for relief from the original judgment, which did not address Saundra's pension at all. Finally, the magistrate determined that the issue of Saundra's entitlement to survivor benefits was not properly before the court.
 {¶ 10} Both parties filed objections to the magistrate's ruling. In a September 10, 2003, judgment entry, the trial court overruled the objections without explanation and adopted the magistrate's decision, including all findings of fact and conclusions of law. Saundra and David then filed their timely appeal and cross appeal.
 II. Saundra's Appeal {¶ 11} In her assignment of error, Saundra claims the trial court erred in failing to address her right to survivor and early retirement benefits under David's GM pension. In response, David argues that these issues were not properly before the trial court at the time of the ruling from which the parties have appealed.
 {¶ 12} Upon review, the record persuades us that Saundra's entitlement to survivor and early retirement benefits was not properly before the trial court. On September 9, 1998, Saundra filed a motion for clarification of the QDRO, addressing only the GM plan administrator's refusal to award her a share of Part B. (Doc. #101). The motion did not mention survivor or early retirement benefits. Thereafter, in response to a motion todismiss filed by David, Saundra briefly mentioned the issue of survivor benefits. (Doc. #111). The trial court then filed a December 31, 1998, judgment entry ruling on Saundra's motion to clarify the QDRO. In its ruling, the trial court found Saundra entitled to a share of Part A and Part B of the GM pension. The trial court also noted in passing that the GM plan administrator had interpreted the QDRO as not providing Saundra with survivor benefits, but the trial court did not address the issue. (Doc. #115). David appealed from the ruling, arguing that Saundra was not entitled to share in Part B and, alternatively, disputing the trial court's formula for dividing Part B. Saundra did not appeal from the trial court's ruling. Thereafter, we sustained David's assignment of error with regard to the trial court's formula for dividing Part B and remanded the matter for recalculation.Hamlin v. Hamlin (June 18, 1999), Darke App. No. 99-CA-1484.
 {¶ 13} In light of the foregoing facts, we find no error in the magistrate's determination, upon remand, that the issue of Saundra's entitlement to survivor benefits was not before the court. Saundra's initial motion for clarification did not raise the issue, the trial court's ruling on that motion did not resolve it, and we did not address it in our June 18, 1999, remand order. As a result, the magistrate and the trial court properly declined to address the issue of survivor benefits. (Doc. #188, 206). We note too that Saundra did not move for clarification of her right to early retirement benefits. In any event, David presented uncontroverted testimony that he would receive only an early retirement reduction and not a benefit.[2] (Jan. 28, 2003, transcript at 89). As a result, Saundra's assignment of error is overruled.
 III. David's Cross Appeal {¶ 14} David advances three assignments of error in his cross appeal. First, he claims the trial court erred in failing to enforce a purported agreement that resolved all issues between the parties. Second, he contends the trial court erred in refusing to consider vested retirement benefits earned by Saundra. Third, he argues that the trial court's formula for dividing Part B of his pension is against the manifest weight of the evidence.
 {¶ 15} As a means of analysis, we will address the foregoing assignments of error in reverse order. David's third assignment of error challenges the trial court's adoption of a formula for computing Saundra's monthly benefit under Part B of his GM pension. We note, however, that David does not contest the content of the formula applied by the trial court to compute Saundra's monthly benefit. Indeed, he could not do so because it is the formula that he proposed. David's real argument is that the trial court should have awarded Saundra a lump sum of $2,553.87, which is half of the value of Part B on the date of the divorce, rather than awarding her a portion of the monthly benefit available under Part B.
 {¶ 16} We find David's argument to be without merit. In his objections to the magistrate's ruling, David asserted that the formula would be "unworkable" because it contained "too many variables." The only variables he cited, however, were possible changes to his salary and a future retirement date. (Doc. #205 at 13). Even assuming, arguendo, that these variables at one time impeded the use of a formula to determine Saundra's monthly benefit under Part B, it appears that they no longer remain variables. On January 28, 3003, David testified that had "made up [his] mind" to retire on May 1, 2003, and had given GM notice of his intent to retire on that date. (Jan. 28, 2003, transcript at 88). If David was true to his word, he now is retired.[3]
Given that his final salary and retirement date are now known, he cites no reason why a monthly benefit cannot be computed for Saundra. In fact, he does not dispute the accuracy of the $81.54 per month award computed by the magistrate and adopted by the trial court. We note too that Saundra testified as to her preference for a monthly benefit under Part B, which appears to be what David receives as well. This preference for a monthly benefit rather than a lump sum is well founded. Saundra is fifty-seven years old, and David is only a year older. In less than three years, a monthly benefit of $81.54 would surpass a lump sum award of $2,553.87. Even considering the time value of a lump-sum award, it is reasonable for both parties to prefer an on-going monthly benefit under Part B given their relatively young ages. In light of Saundra's preference for the monthly award and David's failure to show that the monthly award is impossible to compute, we overrule his third assignment of error.
 {¶ 17} In his second assignment of error, David claims the trial court erred in refusing to consider vested retirement benefits that Saundra earned during the marriage. This argument concerns Saundra's failure to disclose, at the time of the parties' divorce, retirement benefits that she had earned through her employment with St. Elizabeth's Medical Center. As a result of the non-disclosure, the 1990 divorce decree stated that Social Security was her only retirement benefit. Saundra revealed during testimony in September, 1999, however, that she had vested retirement benefits through St. Elizabeth's Medical Center at the time of divorce. Based on this admission, David moved on April 11, 2000, for "clarification" of the QDRO, asserting that Saundra's retirement benefits, which he valued at approximately $8,000 at the time of the divorce, should be considered in the division of his GM pension. The magistrate and the trial court overruled the motion, finding that it constituted an untimely motion under Civ.R. 60(B).
 {¶ 18} On appeal, David concedes that his motion arose under Civ.R. 60(B), as it sought to change rather than merely to "clarify" a QDRO. David nevertheless argues that the motion should have been sustained given that Saundra's vested retirement "was hidden and not disclosed" until 1999. He reasons that his motion was timely under Civ.R. 60(B)(5) because he filed it promptly after discovering Saundra's pension.
 {¶ 19} Upon review, we find David's argument to be without merit. Although Civ.R. 60(B)(5) has no absolute time limit barring relief thereunder, it is a catch-all provision that applies only when none of the more specific grounds for relief under Civ.R. 60(B)(1) through (4) are applicable. Caruso-Ciresi,Inc. v. Lohman (1983), 5 Ohio St.3d 64, 66. In the present case, David argues that he could not have discovered the existence of Saundra's retirement plan until hearing her testimony in 1999 because she previously had denied having any retirement other than Social Security. If David's assertion is true, then he might have a claim under Civ.R. 60(B)(2) based on newly discovered evidence that could not have been discovered earlier, or under Civ.R. 60(B)(3) based on fraud, misrepresentation, or other misconduct of an adverse party. We note, however, that Civ.R. 60(B) requires a motion based on either of the foregoing grounds to be filed within one year of the judgment or order from which relief is sought. In the present case, the divorce decree was filed in 1990, and the QDRO was filed in 1995. Thus, David cannot obtain relief under Civ.R. 60(B)(2) or (3). We also have held that a party "may not circumvent the one-year limitation by seeking to vacate a judgment under Rule 60(B)(5) which is not subject to the one-year limitation but which is duplicative of a ground which is subject to the limitation." Dealease ServiceCorporation v. Gagel (April 25, 1985), Montgomery App. No. 9212. Therefore, we find no error in the trial court's refusal to consider Saundra's retirement benefits, and we overrule David's second assignment of error.[4]
 {¶ 20} In his first assignment of error, David claims the trial court erred in failing to enforce a purported agreement that resolved all issues between the parties. As noted above, this issue concerns the parties' attempt to negotiate a settlement following our prior remand order. The negotiations included the drafting of a proposed agreed judgment entry by David's counsel. On appeal, David argues that Saundra and her attorney reviewed the proposal and made handwritten changes, which he then accepted by signing the entry and tendering a check in the agreed-upon amount. Although Saundra subsequently declined the check and refused to sign the proposed agreed entry, David insists that a valid agreement existed. Even though the proposal was not enforceable as an order of the court (because the trial court never approved or filed it), David reasons that it was enforceable under ordinary contract law. In particular, he contends Saundra's handwritten changes constituted a counteroffer, which he accepted by signing a new typed agreement incorporating her changes in full and tendering a check.
 {¶ 21} Upon review, we find David's argument to be unpersuasive. When a settlement agreement is extrajudicial, it may be enforced only if a binding contract exists. Bolen v.Young (1982), 8 Ohio App.3d 36, 38. "The law is clear that to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other." Noroski v. Fallet (1982),2 Ohio St.3d 77, 79. To be enforceable as a binding contract, a settlement agreement requires no more formality than any other type of contract. It need not necessarily be signed, as even oral settlement agreements may be enforceable. Kostelnik v. Helper,96 Ohio St.3d 1, 3, 2002-Ohio-2985. However, "it is well established that courts will give effect to the manifest intent of the parties where there is clear evidence demonstrating that the parties did not intend to be bound by the terms of an agreement until formalized in a written document and signed by both[.]" Berjian v. Ohio Bell Telephone Co. (1978),54 Ohio St.2d 147, 151; see, also, Curry v. Nestle USA, Inc. (July 27, 2000), Sixth Cir. App. No. 99-3877 at *7 ("`In Ohio, when parties intend that their agreement shall be reduced to writing and signed, no contract exists until the written agreement is executed.'").
 {¶ 22} In the present case, the magistrate declared the proposed agreement unenforceable based primarily on Saundra's refusal to sign it. (Doc. #159 at 2). The magistrate found that the parties had intended for signatures to be required in order to have a binding agreement. In support, the magistrate noted the existence of signature lines on the final draft incorporating Saundra's proposed changes, which included the addition of a line for her own signature. The magistrate also noted that David's counsel presented Saundra with the final draft for her signature, suggesting that the parties believed her signature was necessary. Finally, the magistrate noted language in the parties' proposed agreed judgment entry referencing "the signatures of the parties affixed below" as evidence of their agreement.
 {¶ 23} Having reviewed the magistrate's ruling, which the trial court adopted as its own, we find no error. Even if Saundra and David tentatively agreed upon the terms in the proposed settlement, the record supports the lower court's conclusion that no binding agreement existed absent her signature. In short, the record supports a finding that the parties did not intend to be bound by the terms of their agreement until it was formalized in a written document signed by both of them. Accordingly, we overrule David's first assignment of error.
 IV. Conclusion {¶ 24} Based on the reasoning set forth above, we affirm the judgment of the Darke County Common Pleas Court, Domestic Relations Division.
Grady, J., and Young, J., concur.
[1] For purposes of clarity, we will refer to the parties by their first names.
[2] In opposition to this assertion, Saundra cited a copy of an incomplete retirement benefits worksheet. Although the worksheet includes spaces for calculating an early retirement benefit, it does not establish that David was entitled to receive the benefit.
[3] On appeal, Saundra asserts that David did retire as planned, and he has not disputed her claim.
[4] Although this outcome may seem unfair to David, we previously applied the same rule when affirming the denial of Saundra's Civ.R. 60(B) motion to obtain her share of David's GM stock, which was undervalued by almost $25,000 in the divorce decree. Despite the inequity of allowing David to retain a disproportionately large share of the stock, we held that Saundra's motion was untimely under Civ.R. 60(B)(1), and that she could not circumvent the one-year time limit by recasting her claim as one arising under Civ.R. 60(B)(5). See Hamlin v.Hamlin (Feb. 12, 1993), Darke App. No. 1312.