[Cite as *Chumlea v. Chumlea*, 2015-Ohio-4196.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

WILLIAM C. CHUMLEA
    Plaintiff-Appellee

v.

CHARLOTTE E. CHUMLEA
    Defendant-Appellant

and

MICHELE CHUMLEA
    Third-Party Defendant-Appellee

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Appellate Case No. 2014-CA-8

Trial Court Case No. 2004-DR-439

(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of October, 2015.

. . . . . . . . . . .

DAVID M. MARTIN, Atty. Reg. No. 006623, 4 West Main Street, Suite 707, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee, William C. Chumlea

JAMES R. KIRKLAND, Atty. Reg. No. 009731, 130 West Second Street, Suite 840, Dayton, Ohio 45402
    Attorney for Third-Party Defendant-Appellee, Michele Chumlea

JAMES A. ALEXANDER, Atty. Reg. No. VA 88223, 1130 George James Loop, Radiant, Virginia 22732
and
STEVEN MAGAS, Atty. Reg. No. 0009131, 7733 Beechmont Avenue, Suite 210, Cincinnati, Ohio 45255
    Attorneys for Defendant-Appellant, Charlotte C. Chumlea

. . . . . . . . . . . .

HALL, J.

{¶ 1} Charlotte Chumlea appeals from the trial court's December 12, 2013 entry in which it, inter alia, overruled her motion for relief under Civ.R. 60(B), revoked an existing constructive trust, stayed a decision regarding life insurance, and awarded her $150 in attorney fees.

{¶ 2} Charlotte advances four assignments of error. First, she contends the trial court erred in awarding her only $150 in attorney fees. Second, she claims the trial court erred in denying her Civ.R. 60(B) relief with regard to appellee William Chumlea's allegedly fraudulent concealment of income totaling roughly $23,000. Third, she asserts that the trial court erred in revoking and denying a constructive trust to protect her from William transferring assets to his new wife. Fourth, she argues that the trial court erred in staying its decision to require William to obtain life insurance.

{¶ 3} The record reflects that Charlotte and William divorced in March 2007 following a 33-year marriage. Since that time, numerous post-divorce proceedings have occurred. Based on the multiple boxes of case-related motions, transcripts, court rulings, and other materials that have been filed, the post-divorce proceedings plainly have been acrimonious. As relevant here, the trial court held three days of hearings in September 2012 and April 2013 to resolve a plethora of motions. At least 13 of those motions were filed by Charlotte. (Doc. #293 at 9). They included, among other things, contempt motions, discovery motions, attorney-fee motions, and a Civ.R. 60(B) motion for relief from the divorce decree on the basis of alleged fraud. With one exception, the trial court overruled

Charlotte's motions. The exception involved its finding that William, who was employed by Wright State University at the time of the hearings, previously had engaged in contemptuous conduct by designating his new wife, Michele Chumlea, the beneficiary of his public-pension benefits in the event that he should die prior to retirement. (*Id.* at 11). The trial court further noted, however, that William had since complied with its order to name Charlotte his pre-retirement beneficiary. (*Id.* at 15). The trial court nevertheless found him in civil contempt for his prior actions. (*Id.* at 13). To protect Charlotte from William again changing his pre-retirement beneficiary, the trial court ordered him to maintain life insurance on his life, with Charlotte as the beneficiary. (Id. at 18). The trial court "suspended" this obligation, however, "upon condition that the Plaintiff, William Chumlea, continues to designate Charlotte Elizabeth Chumlea as the sole beneficiary of all of his Public Pension Retirement Account contributions, with accumulated interest thereon, until such time as he retires and Charlotte Elizabeth Chumlea begins receiving her covertured share of the Court ordered monthly survivor benefits to which she is entitled." (*Id.*). In light of this ruling, the trial court vacated a prior constructive trust that it had imposed on Michele Chumlea to serve the same purpose as the life insurance, i.e., to protect Charlotte's interest in William's pension benefits in the event that he should die before retiring. (*Id.* at 19).

{¶ 4} A second major issue during the three days of hearings involved Charlotte's request for Civ.R. 60(B) relief from the divorce decree. She sought relief on the basis that William allegedly had concealed more than $23,000 in income by deferring receipt of it until after the divorce decree became final. The trial court addressed this issue in its December 12, 2013 entry as follows:

On August 10, 2011, Charlotte filed a Motion seeking relief from the original Judgment Entry and Decree of Divorce filed March 21, 2007. The Court conducted a final evidentiary hearing concerning this issue which took place over the course of the three days set forth hereinbefore. Essentially, Charlotte contends that Dr. Chumlea had, as of July 31, 2006 (which was between the fourth and final day of testimony in the parties' divorce case) earned the right to receive additional income in the sum of $23,128.00. The Court notes that Dr. Chumlea received that sum of money on April 5, 2007, approximately four months after he last testified at the parties' divorce hearing.

Charlotte essentially contends that Mr. Chumlea "schemed" to hide this income. The totality of the credible evidence does not support Charlotte's contention concerning this issue. The Court does not find that Dr. Chumlea "schemed" to hide this income despite Charlotte's contentions to the contrary.

* * *

In the case at hand, Charlotte essentially contends that Dr. Chumlea committed fraud, which would be properly addressed by Civil Rule 60(B)(3). This Motion must be brought not more than one year after the Divorce Decree was filed, which it was not. Rather, Charlotte brings her Motion in accordance with Civ.R. 60(B)(5) which is permitted, by law, to be made "within a reasonable time." She cannot, however, utilize a Motion for relief

from judgment under Civil Rule 60(B)(5) if the basis for the Motion meets the criteria of one of the other subsections of Civil Rule 60(B). Such is the case here.

\* \* \*

Charlotte's Motion is not made in a timely fashion and even if it was, she has not presented sufficient evidence that she is entitled to relief under one of the grounds set forth in Civ.R. 60(B) nor has she presented a meritorious claim. Accordingly, her Motion for Relief from Judgment is not well taken and her request for attorney fees is similarly not well taken.

(*Id.* at 24-25).

{¶ 5} Having found William in civil contempt for his earlier failure to designate Charlotte as his pre-retirement pension beneficiary, however, the trial court still awarded her "nominal" attorney fees of $150. (*Id.* at 33-34). This appeal followed.

{¶ 6} As a means of analysis, we turn first to Charlotte's third and fourth assignments of error, which are moot. In her third assignment of error, Charlotte contends the trial court erred in vacating the constructive trust it previously had imposed on Michele Chumlea. Charlotte asserts that the April 2011 order imposing the constructive trust was a final order from which an appeal was taken. Once that appeal was dismissed with prejudice, Charlotte argues that the law-of-the-case doctrine precluded the trial court from vacating the constructive trust.

{¶ 7} We find Charlotte's argument unpersuasive. On April 26, 2011, the trial court imposed a constructive trust on William's new wife, Michele Chumlea. The purpose of the constructive trust was to prevent William from making Michele the beneficiary of his

pension in contravention of a trial court order awarding Charlotte a coverture fraction of the pension. (Doc. #144). Charlotte and the trial court were particularly concerned that William might designate Michele as his pre-retirement beneficiary and then die, leaving Charlotte with no benefits at all.

{¶ 8} We note, however, that William subsequently retired effective July 1, 2014 with Charlotte receiving her coverture share of his pension benefits. Because William retired with benefits under "option 4" pursuant to R.C. 3307.60(A)(4), Charlotte also will receive her coverture share of survivor benefits for the remainder of her life. It is apparent, therefore, that the previously-imposed constructive trust is no longer necessary. We note too that the trial court explicitly reserved jurisdiction over the constructive trust when imposing it. (Doc. #144, Exh. A, pg. 4). For these reasons, we see no error in the trial court's decision to vacate the constructive trust. The third assignment of error is overruled.

{¶ 9} In her fourth assignment of error, Charlotte contends the trial court erred in staying its order for William to obtain life insurance to protect her interest in his pension. Charlotte insists that "[i]t is unreasonable to expose [her] to a second theft before implementing life insurance protection." (Appellant's brief at 25). As noted above, however, the purpose of the life insurance was to prevent William from re-naming his new wife as the sole beneficiary of his pension benefits before his retirement. (Sept. 13, 2012 Tr. at 123). But William now has retired. When he retired, he named Charlotte as a beneficiary. She admittedly is receiving a coverture fraction of his pension, and she has an irrevocable right to survivor benefits for life.[1] Therefore, the purpose for the life-

---

[1] William selected Option 4 for his State Teachers Retirement which provides partial continuing lifetime benefits for both Charlotte and his current wife Michele. This selection, and its consequences, has been challenged in a separate appeal in Clark Co. App. No.

insurance protection regarding pre-retirement survivor benefits no longer exists. The issue is moot. The fourth assignment of error is overruled.

{¶ 10} We turn next to Charlotte's second assignment of error, which challenges the trial court's denial of her Civ.R. 60(B) motion concerning the roughly $23,000 in income that William allegedly "hid" by delaying his receipt of it until after the divorce decree became final. Charlotte asserts that "[t]he conclusory denial of the Civ.R. 60(B) motion as late, without any reasoning, does not comport with the facts." (Appellant's brief at 23). She contends she filed her motion promptly upon discovering "Mr. Chumlea's unrestricted right to the income in 2006, his control of the funds, his deliberate acts in hiding the income until after the decree, his telling his attorney about the income, his false testimony in court omitting these funds from his full income, and his taking of the money immediately after the decree was issued." (*Id.*). She asserts that her motion was meritorious and timely under Civ.R. 60(B)(5) because it involved "fraud on the court." In a reply brief, Charlotte suggests that the "fraud on the court" involved William's attorney acting in concert with William to conceal the $23,000 in income from the court and to prevent her from discovering it.

{¶ 11} Upon review, we see no error in the trial court's denial of Civ.R. 60(B) relief. During the three days of hearings on the parties' motions, William provided detailed testimony about the income at issue. He insisted that he had testified truthfully about his income at the time of the divorce hearing. William explained that he did not mention the roughly $23,000 at issue because he had not received it. (Sept. 13, 2012 Tr. at 79). He stated that the money was part of a faculty-incentive program intended to encourage

2014-CA-75.

Wright State University faculty members such as him to obtain grants. (*Id.* at 80-81). He also provided reasons why his receipt of the money was delayed until after the divorce decree became final. (*Id.* at 82-89). They included the fact that the funds initially were held in another faculty member's account and the fact that he was permitted to use the funds for other job-related expenses, instead of taking a cash incentive payment, and he had contemplated doing so. (*Id.*; see also Sept. 14, 2012 Tr. at 33, 53-57; April 26, 2013 Tr. at 73). Although Charlotte disbelieves these explanations, the trial court held that the evidence did not support a finding that William fraudulently had schemed to hide the income by delaying receipt of it. (Doc. #293 at 24). Therefore, the trial court found no basis for relief on the grounds of fraud even assuming, arguendo, that her motion was timely.

{¶ 12} It is well settled that "[m]otions for relief from judgment under Civ.R. 60(B) are addressed to the sound discretion of the trial court, and the court's ruling 'will not be disturbed on appeal absent a showing of abuse of discretion.' * * *." *Jackson v. Hendrickson*, 2d Dist. Montgomery No. 21921, 2008-Ohio-491, ¶ 28. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. * * * A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990) * * *." *Bohme v. Bohme*, 2d Dist. Montgomery No. 26021, 2015-Ohio-339, ¶ 11.

{¶ 13} Here the trial court overruled Charlotte's motion after conducting a hearing and finding that the evidence did not support her claim that William fraudulently had schemed to hide the money at issue. In light of William's testimony on the issue, we

cannot say the trial court abused its discretion in reaching this conclusion. Accordingly, the second assignment of error is overruled.

{¶ 14} In her sole remaining assignment of error, Charlotte challenges the trial court's decision to award her only nominal attorney fees of $150. She references, among other things, what she characterizes as William's "theft" of $2,250,000, his delays and discovery violations, his unaccounted-for deposits of $117,424.34 in his accounts, and his one-time arrest to compel his attendance at a court proceeding as evidence that her professed post-divorce attorney fees totaling about $100,000 were warranted and that William should have been required to pay them. (Appellant's brief at 21-23).

{¶ 15} Charlotte focuses most of her attention of the first issue, what she characterizes as William's "theft" of $2,250,000 from her. (*Id.* at 22-23). This is an apparent reference to the fact that William, for a period of time, failed to comply with a court order to designate her as beneficiary of his pre-retirement survivor benefits before his retirement from Wright State University. The $2,250,000 figure Charlotte uses appears to be an estimate of the lump-sum present value of his survivor benefits but, fortunately, that estimated value would only apply if she survived and he had died before retirement. As noted above, although Charlotte had been his pre-retirement survivor beneficiary, he made his new wife, Michele Chumlea, such beneficiary when he remarried. (Doc. #293 at 10). That action prompted Charlotte to file a July 2010 contempt motion against William. The trial court sustained her motion while also noting, however, that William had since properly designated Charlotte as the beneficiary and had continued to keep her so designated for approximately *three years* prior to the court's hearing on the matter. (*Id.* at 15). Nevertheless, as a result of sustaining the contempt motion, the trial court awarded

Charlotte attorney fees of $150. (*Id.* at 33).

{¶ 16} We review a trial court's award of attorney fees for an abuse of discretion. *Taylor v. Taylor*, 2d Dist. Miami No. 2012 CA 21, 2015-Ohio-701, ¶ 37. Having reviewed the record, we see no abuse of discretion here because we cannot say the trial court's attorney-fee award was unreasonable, arbitrary, or unconscionable. Aside from the one contempt motion discussed above, the trial court *overruled* all of the other motions in connection with which Charlotte had sought attorney fees. (*Id.* at 19-34). A number of those motions addressed discovery issues. The trial court noted that it had afforded Charlotte "great leeway concerning discovery issues[.]" (*Id.* at 19). It also found that "[t]he discovery which she requested was voluminous and required many hours of effort by Dr. Chumlea to answer questions, secure documents and gain compliance with Charlotte's multitude of discovery requests." (*Id.*). The record supports this finding. At one point, William testified that he had spent "at least 98 hours" over a three-month period responding to discovery requests. (April 26, 2013 Tr. at 73). Finally, the trial court found "from the totality of the credible evidence, that Dr. Chumlea has, for the most part, during the pendency of this litigation, acted in good faith concerning the issues of discovery[.]" (*Id.* at 19-20). Later in its ruling, the trial court concluded that "Dr. Chumlea, for the most part, acted in good faith in complying with Charlotte's voluminous discovery requests as well as the requirements placed upon him by this Court's Temporary Orders." (*Id.* at 32). The trial court is better positioned than this court to make this determination, which was well within its discretion.

{¶ 17} The trial court also overruled other assorted motions filed by Charlotte,

including the Civ.R. 60(B) motion discussed above, and declined to grant her attorney fees in connection with them. (Doc. #293 at 21-26). In her other assignments of error on appeal, Charlotte has not established any error by the trial court in its ruling on these motions. Therefore, we cannot say the trial court erred in refusing to award her attorney fees predicated on them.

{¶ 18} Finally, we turn to Charlotte's allegation that William had unexplained bank deposits of $117,424.34 in his accounts. By itself, such an allegation (even if true) does not mandate an award of attorney fees to Charlotte.[2] At the time of the hearings below, Charlotte voluntarily dismissed, without prejudice to refiling, a pending motion to modify spousal support that apparently had been based, at least in part, on William's alleged additional bank deposits of roughly $117,000 and/or his receipt of the roughly $23,000 incentive payment discussed above. (Doc. #300). If Charlotte ultimately succeeds in having spousal support modified, then she potentially might be entitled to an additional attorney fee award for her effort. That issue, of course, would be for the trial court to resolve in the first instance. It is not now before us because the record on appeal does not reveal any modification of Charlotte's spousal support based on William having previously-unknown additional income. For the reasons set forth above, Charlotte's assignment of error concerning attorney fees is overruled.

{¶ 19} Having overruled each assignment of error, we affirm the judgment of the Clark County Common Pleas Court, Domestic Relations Division.

. . . . . . . . . . . . .

---

[2] In his testimony below, William suggested that these funds simply might be money transferred from his new wife's account into his account rather than additional income. (April 26, 2013 Tr. at 76).

FAIN, J., and WELBAUM, J., concur.


Copies mailed to:

David M. Martin
James R. Kirkland
James A. Alexander
Steven M. Magas
Hon. Thomas J. Capper